# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re

PATRICIA ANN SCOTT,

    Debtor.

Case No. 23-31424-CLH

Chapter 13

## MEMORANDUM OPINION AND ORDER SUSTAINING IN PART DEBTOR'S OBJECTION TO CLAIM

On October 3, 2024, this matter came before the Court on the Objection to Claim filed by Patricia Ann Scott (the "Objection") [Doc. No. 25].[1] Upon consideration of the pleadings of record, the parties' arguments, and for the reasons below, the Objection is SUSTAINED in part.

### I. Jurisdiction

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by the United States District Court for the Middle District of Alabama on April 25, 1985. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### II. Introduction

The docket sheet and claims register are filled with plans, objections to confirmation, proofs of claim, amended proofs of claim, and objections to proofs of claim, many of which revolve around a loan (the "Loan") made by Republic Finance ("Republic") to Patricia Ann Scott (the "Debtor"). In connection with the Loan, Republic took a nonpossessory, non-purchase money security interest in certain assets of the Debtor. While the parties have raised several factual and legal disputes to date, their Joint Motion to Continue and Partial Stipulation of Dismissal (the "Partial Stipulation") [Doc. No. 66] narrowed the issues before the Court to: 1)

---

[1] "Doc. No." refers to the docket number for a filing in the instant bankruptcy case, Case Number 23-31424.

whether some or all of the collateral securing the Loan are "household goods" under 16 C.F.R. § 444.1, thereby violating 16 C.F.R. § 444.2(a)(4); and 2) if so, does the violation render (i) Republic's lien on such collateral unenforceable or void or (ii) the entire loan agreement void *ab initio*. As detailed below, the Court concludes that certain items the Debtor pledged as collateral constitute "household goods" under 16 C.F.R. § 444.1 such that the lien on those items is unenforceable, but that does not render the Loan void *ab initio*.

### III. Background and Procedural History

On July 21, 2023 (the "Petition Date"), the Debtor filed the instant bankruptcy case. In her schedules, the Debtor listed Republic as an unsecured creditor holding a debt totaling $6,892.00. [Doc. No. 1 at p. 22]. The Debtor's original plan, also filed on July 21, 2023, did not propose to treat Republic as a secured creditor. [Doc. No. 2].

On July 25, 2023, Republic filed a proof of claim, asserting a secured claim in the amount of $6,423.94 (the "Original Proof of Claim") [Claim No. 1-1].[2] The Original Proof of Claim attached that certain Combination Promissory Note, Truth in Lending Disclosure Statement and Security Agreement dated May 30, 2023 (the "Loan Agreement"). The Loan Agreement listed as collateral, without limitation: a) a Craftsman Push Mower valued at $500.00 (the "Lawnmower"); b) a Ryobi Weedeater valued at $200.00 (the "Weedeater"); c) a Westinghouse Generator valued at $850.00 (the "Generator"); and d) a Honda Pressure Washer valued at $850.00 (the "Pressure Washer"). The Original Proof of Claim attached a UCC Financing Statement, filed with the Alabama Secretary of State on May 30, 2023, that listed the Lawnmower, Weedeater, Generator, and Pressure Washer (collectively, the "Disputed Collateral"), as well as other collateral securing the Loan.

---

[2] "Claim No." refers to the number assigned to a proof of claim filed in the instant bankruptcy case, Case Number 23-31424.

On July 27, 2023, Republic objected to confirmation of the Debtor's plan, asserting, without limitation, that the Debtor's execution of the Loan Agreement within two months prior to the Petition Date—coupled with her failure to make any payments on the Loan – constituted bad faith. [Doc. No. 12]. On September 11, 2023, the Debtor filed her first amended plan, pursuant to which the Debtor proposed to partially avoid Republic's lien and treat Republic's claim as secured only for $125.00. [Doc. No. 18]. On September 12, 2023, Republic filed a renewed Objection to Confirmation of the Debtor's Chapter 13 Plan as Amended, again asserting that the Debtor's plan was not proposed in good faith. [Doc. 19]. Republic stated that "[t]he Generator and Pressure Washer do not reasonably fit within the shelter of household goods pursuant to 11 U.S.C. § 522(f)(1)(B)(i)." [Doc. 19]. The Debtor filed her second amended plan on September 28, 2023, increasing the amount of Republic's secured claim to $300.00. [Doc. 22]. The same day, Republic objected to confirmation of the second amended plan, incorporating the arguments from its prior objections. [Doc. 23].

On October 2, 2023, the Debtor filed the Objection, asserting among other things that the Loan Agreement was illegal because it contained a nonpossessory, non-purchase money security interest in household goods in violation of Section 5 of the Federal Trade Commission Act (the "FTC Act"), as implemented by 16 C.F.R. § 444.2(a)(4). *See* Objection at ¶ 3.[3] The Debtor argued that because the Loan Agreement violated the FTC Act and its implementing regulation, it was void and unenforceable in its entirety, despite the limitation in the Loan Agreement that it "does not grant to [Republic] a non-purchase money security interest in household goods as defined at 16 C.F.R. 444." *See* Objection at ¶¶ 4-7.

---

[3] The Debtor filed an objection to Republic's claim on August 25, 2023 [Doc. No. 15] but withdrew that objection on August 28, 2023 [Doc. No. 16].

On October 24, 2023, Republic amended its proof of claim to reclassify it as unsecured (the "Amended Proof of Claim") [Claim No. 1-2]. The next day, Republic filed a response to the Objection, arguing that because it had amended its claim to reclassify it as unsecured, the Objection was moot. [Doc. No. 33]. On October 25, 2023, the Debtor filed her third amended plan (the "Plan"), which – reflective of the Amended Proof of Claim – proposed to treat the debt owed to Republic as unsecured. [Doc. No. 32]. Republic withdrew its objections to confirmation on the same day. [Doc. No. 34].

On October 30, 2023, the Debtor replied to Republic's response to the Objection, again asserting that the Loan Agreement was illegal and unenforceable in its entirety and arguing that if Republic could simply amend or withdraw claims when challenged, the issue would remain capable of repetition, yet evading review. [Doc. No. 37]. On November 28, 2023, Republic responded, without limitation, that: there is no dispute that the Debtor owes Republic at least $6,892.00; Republic's practice is not to take nonpossessory, non-purchase money security interests in household goods; and the definition of "household goods" under 16 C.F.R. § 444.1 is highly restrictive, such that the Disputed Collateral is excluded. [Doc. No. 43].

The Debtor amended her schedules on November 29, 2023, to note that she disputed Republic's claim. [Doc. No. 45]. With no objections to confirmation outstanding, the Court confirmed the Plan on December 7, 2023. [Doc. No. 52]. Under the Plan, unsecured creditors, including Republic, will receive no distributions.

The Court originally set the Objection for an evidentiary hearing on April 9, 2024. [Doc. No. 48]. At the parties' request, the evidentiary hearing was reset for June 11, 2024. [Doc. No. 64]. Pursuant to the Partial Stipulation, the parties filed competing motions for summary judgment, and the Court set these motions for oral argument on October 3, 2024. [Doc. No. 82].

Following the hearing, the Court took the matter under advisement and allowed the parties additional time to submit any post-hearing briefs. On October 17, 2024, Republic filed a supplemental response. [Doc. No. 87].

### III. Legal Analysis and Conclusions of Law

**A. The "voluntary cessation" exception to the mootness doctrine applies in this case.**

Given that the Amended Proof of Claim was filed as an unsecured claim – and given that the Plan provides for no distribution to unsecured creditors – the Court first considers whether the issues presented are moot. The Debtor argues that an exception to the mootness doctrine applies because the issue is capable of repetition, yet evading review. To establish that an action is capable of repetition, yet evading review, the party must show that "the challenged action [is] in its duration too short to be fully litigated prior to its cessation" and that "there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477-78 (11th Cir. 1997) (quoting *Weinstein v. Bradford*, 424 U.S. 147, 149 (1975)). In this case, the Objection is not too short in its duration to be fully litigated prior to its cessation. Also, there is not a reasonable expectation that the Debtor will be subjected again to Republic's practices and related claims in bankruptcy. Accordingly, the "capable of repetition, yet evading review" exception to the mootness doctrine does not apply.

The Debtor's assertions do, however, present a different exception to the mootness doctrine. Under the doctrine of voluntary cessation, a case will not be mooted by the termination of a party's offending behavior if there is a reasonable expectation that the voluntarily ceased activity will, in fact, recur after the termination of the suit. *Troiano v. Supervisor of Elections in Palm Beach County, Florida*, 382 F.3d 1276, 1282-83 (11th Cir. 2004). "Mere voluntary

cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).

As for the issue presented here, the Debtor referred to several prior cases in which Republic filed secured proofs of claim and then withdrew the claims once a debtor challenged the legality of Republic's loan agreements under the FTC Act.[4] There is not merely a reasonable expectation that the voluntarily ceased activity will recur. Rather, there is direct evidence that the voluntarily ceased activity in the prior cases *has actually* recurred. Like those prior cases before the Court, Republic has attempted to moot the challenge to its lending practices by filing the Amended Proof of Claim to reclassify the debt as unsecured. Accordingly, the "voluntary cessation" exception to mootness applies, and the Court will rule on the issues presented in the Partial Stipulation.

### B. The Debtor may assert a violation of the FTC Act via the Objection.

Republic argues that the Debtor may not raise a violation of the FTC Act as a defense to the Amended Proof of Claim. In support of its argument, Republic leans heavily on *Vino 100, LLC v. Smoke on the Water, LLC*, 864 F. Supp. 2d 269 (E.D. Pa. 2012), in which the parties litigated issues related to the acquisition of franchises. In *Vino*, the court held that private parties may not enforce the FTC Act. *Vino, LLC*, 864 F. Supp. 2d at 281. However, in that case, the

---

[4] In the Ingram case (Case Number 17-32427), the Patterson case (17-32457), the Banks case (17-33072), and the Jones case (17-33147), Republic filed proofs of claim asserting security interests in, among other things, lawn mowers, weed eaters and edgers. When the debtors challenged the legality of the agreements in these cases, Republic withdrew its claims, analogous to the amendment to its proof of claim filed in this case.
- 6 -

defendants' argument on the FTC Act was raised as a counterclaim, not as an affirmative defense.[5]

Other unpublished opinions cited by Republic are similarly distinguishable because the assertions regarding the FTC Act were brought in complaints rather than being presented as affirmative defenses. *See Palermo Gelato, LLC v. Pino Gelato, Inc.*, Case No. 2:12-00931, 2013 WL 285547, at *6 (W.D. Pa. Jan. 24, 2013); *Meissner v. BF Labs Inc.*, Case No. 13-2617-RDR, 2014 WL 2558203, at *3 (D. Kan. June 6, 2014). In one unpublished opinion cited by Republic, the court rejected a defendant's affirmative defense under the FTC Act, but the court did so because the contract in question did not violate the regulation and there existed no close nexus between the contract and the asserted FTC Act violation. *Holiday Hospitality Franchising, Inc. v. 174 W. St. Corp.*, No. 1:05-CV-1419-TWT, 2006 WL 2466819, at *6 (N.D. Ga. Aug. 22, 2006).

Republic cites multiple state court and federal district court opinions addressing the availability of affirmative defenses under statutes and regulations other than the FTC Act and 16 C.F.R. § 444. Yet, the only circuit court opinion cited by Republic rejects Republic's position. *See Costello v. Grundon*, 651 F.3d 614, 627 (7th Cir. 2011) (permitting the defendant to assert an affirmative defense under the Securities Exchange Act even though the statute did not permit a private cause of action).

More importantly, the United States Supreme Court has addressed the issue in *Kaiser Steel Company v. Mullins*, 455 U.S. 72 (1982). In *Kaiser*, the Court noted that while only the National Labor Relations Board could pursue affirmative remedies for unfair labor practices, the Court could not enforce a contract provision that violated the National Labor Relations Act. *Id.*

---

[5] *See Vino 100, LLC and the Tinderbox Int'l Ltd. v. Smoke on the Water, LLC, Thomas Slaterbeck, and Jane Slaterbeck,* Case No. 09-cv-4988, United States District Court for the Eastern District of Pennsylvania, at Doc. 13.

at 86. Republic posits that *Kaiser* should be read narrowly, given that private causes of action are permitted in certain circumstances under the statutes referenced in the opinion. That is a strained interpretation of *Kaiser*. The holding in *Kaiser* is not limited to parties asserting defenses when the underlying statute provided a private cause of action. Rather, the opinion made clear that "a federal court has a duty to determine whether a contract violates federal law before enforcing it." *Id.* at 83. As noted:

> A defendant proffering the defense seeks only to be relieved of an illegal obligation and does not ask any affirmative remedy based on the . . . laws. "[A]nyone sued upon a contract may set up as a defence that it is a violation of the act of Congress, and if found to be so, that fact will constitute a good defence to the action."

*Id.* at 81, n. 7 (quoting *Bement v. Nat'l Harrow Co.*, 186 U.S. 70, 88 (1902)). The policy behind the holding in *Kaiser* was referenced at the hearing on the Objection, namely that: "[w]ere the rule otherwise, parties could be compelled to comply with contract clauses, the lawfulness of which would be insulated from review by any court." *Id.* at 86. Other bankruptcy courts have avoided taking the narrow approach to *Kaiser* for which Republic advocates. *Anderson v. Charleston Cap. Corp. (In re Kennerly)*, 90 B.R. 781, 787 (Bankr. D.S.C. 1987); *In re Heritage Hotel Associates, LLC*, Case. No. 8:19-bk-09946-CED, 2021 WL 2646533, at *12-13 (Bankr. M.D. Fla. June 28, 2021). A broader view of *Kaiser* is particularly apt in the context of a proof of claim, where Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a proof of claim executed and filed in accordance with the rules shall constitute *prima facie* evidence of the validity and amount of the debt. Accordingly, the Court concludes that the Debtor may assert violations of the FTC Act and 16 C.F.R. § 444 via the Objection.

### C. The Lawnmower and Weedeater are "household goods" for purposes of the FTC Act.

Having addressed the technical challenges to the Objection, the Court now considers the substantive issue of whether the Disputed Collateral constitutes "household goods" under the FTC Act and its implementing regulation. The regulation defines "household goods" as:

> Clothing, furniture, appliances, one radio and one television, linens, china, crockery, kitchenware, and personal effects (including wedding rings) of the consumer and his or her dependents, provided that the following are not included within the scope of the term household goods:
>
> > (1) Works of art;
> > (2) Electronic entertainment equipment (except one television and one radio);
> > (3) Items acquired as antiques; and
> > (4) Jewelry (except wedding rings).

16 C.F.R. § 444.1(i). Classification of the collateral is important because the FTC Act prohibits creditors from taking a nonpossessory, non-purchase money security interest in household goods:

> In connection with the extension of credit to consumers in or affecting commerce, as commerce is defined in the Federal Trade Commission Act, it is an unfair act or practice within the meaning of Section 5 of that Act for a lender or retail installment seller directly or indirectly to take or receive from a consumer an obligation that . . . constitutes or contains a nonpossessory security interest in household goods other than a purchase money security interest.

16 C.F.R. § 444.2(a)(4).

Both the Debtor and Republic argue that the Court should apply the regulation's plain meaning, but they reach opposing conclusions. The United States Supreme Court has provided guidance:

> If the statutory language is plain, we must enforce it according to its terms. But oftentimes the "meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." So when deciding whether the language is plain, the Court must read the words "in their context and with a view to their place in the overall statutory scheme."

*King v. Burwell*, 576 U.S. 473, 486 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)) (internal citations omitted).

Republic asserts that to aid the Court's interpretation of the regulation, the Court should be guided by the *expressio unius est exclusio alterius* canon of statutory construction, which provides that the mention of one thing implies the exclusion of another. *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 144 (11th Cir. 2023). The challenge in applying that canon here is that there are two lists in the regulation. One list includes items that *are* "household goods," and the other list includes items that *are not* "household goods." 16 C.F.R. § 444.1(i). The Disputed Collateral is not among the items included in either list. The Court declines Republic's implicit request to apply the canon to the list of items that are "household goods," but to ignore the canon when considering the list of items that are not "household goods."

The Debtor cites cases in which bankruptcy courts have adopted a broad definition of "household goods" for purposes of lien avoidance under 11 U.S.C. § 522(f). *See, e.g. In re Evans*, 548 B.R. 449, 457 (Bankr. N.D. Miss. 2016); *In re Zieg*, 409 B.R. 917, 912 (Bankr. W.D. Mo. 2009). Conversely, Republic cites *In re Vale*, 110 B.R. 396, 398-99 (Bankr. N.D. Ind. 1989) for the proposition that this Court must adopt a "highly restrictive definition" of 16 C.F.R. § 444.1(i).[6] The parties have also provided the Court nearly a dozen unique dictionary definitions of the term "appliance," each slanted toward their respective positions. Neither party, however, cites an opinion in which a court has directly addressed whether items such as the Disputed Collateral constitute "household goods" for purposes of 16 C.F.R. § 444.1(i). Given that the Disputed Collateral is not among the items explicitly included or excluded from the

---

[6] The Court in *Vale* was not interpreting 16 C.F.R. § 444.1(i); it was interpreting 11 U.S.C. § 522(f). Accordingly, the court's discussion of the FTC standard in *Vale* is dicta.

- 10 -

regulation's examples of "household goods," the Court must determine which list the Disputed Collateral belongs on, considering the context of the regulation. *See Burwell,* 576 U.S. at 486.

There is no dispute that a major purpose of the FTC Act, as implemented by 16 C.F.R. § 444.1(i), is to protect consumers from economic injuries. *See F.T.C. v. Febre*, 128 F.3d 530, 537 (7th Cir. 1997). The commentary to 16 C.F.R. § 444 states that the purpose of the rule "is to prevent the use of non-purchase money security interests in those household goods *which constitute necessities* and not to prevent consumers from . . . pledging certain valuable assets if they choose to." 49 Fed. Reg. 7740-01, 7767 (March 1, 1984) (emphasis added). The commentary indicates the intent to narrow "the definition of 'household goods' to more nearly limit coverage to necessities and to permit the pledge of certain possessions which have significant economic value." *Id.* The Federal Trade Commission chose to "define 'household goods' in terms of a list of common *household necessities*, together with some items of uniquely personal value." *Id.* (emphasis added). The Court finds the emphasis on "household necessities" particularly enlightening, as it helps to establish the contours for the types of collateral the regulation intended to insulate from nonpossessory, non-purchase money security interests.

In this context, the Court concludes that, under the regulation, the Lawnmower and Weedeater are "household goods." These items are more in the nature of "household necessities" used for home maintenance than they are non-utilitarian "possessions with significant economic value" that should be excluded from the definition. *See* 49 Fed. Reg. 7740-01, 7767. While a close call, the Court concludes that the Pressure Washer and Generator are not household goods under 16 C.F.R. § 444.1(i), as they are not true household necessities and might

- 11 -

Case 23-31424   Doc 89   Filed 12/05/24   Entered 12/05/24 15:05:00   Desc Main
Document      Page 11 of 14

have significant economic value to collateralize via a nonpossessory, non-purchase money security interest.[7]

Accordingly, the Court finds that the Loan Agreement violated the FTC Act and its implementing regulation – 16 C.F.R. § 444.2(a)(4) – with respect to Republic's security interest in the Lawnmower and Weedeater.

### D. The Loan Agreement is not *void ab initio*.

The Debtor contends that if Republic's attempt to take a security interest in any piece of the Disputed Collateral results in a violation of 16 C.F.R. § 444.2(a)(4), the Loan Agreement should be declared void *ab initio*. Conversely, Republic asserts that the proper remedy is to sever the aspects of the Loan Agreement that contravene the FTC Act and its implementing regulation – 16 C.F.R. § 444.2(a)(4).

The Loan Agreement contains a severability clause, which provides that "[a]ny unenforceable portion of this Note will be severed and the remainder shall remain enforceable" and that "[i]f any part of this Contract is fully determined to be unenforceable under any law, rule or regulation, all other parts of this Contract still are valid and enforceable." [Claim 1-2]. "Alabama law favors severability, and it gives full effect to severability clauses." *Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d 1024, 1032 (11th Cir. 2003). Even when an agreement lacks a severability clause, Alabama law supports excising void or illegal provisions in a contract and enforcing the rest of the contract. *Ex Parte Celtic Life Ins. Co.*, 834 So.2d. 766, 769 (Ala. 2002) (citations omitted) (citing Alabama cases). When determining whether to void an entire contract or sever the illegal clause, the Alabama Supreme Court has stated that "if the contract cannot be executed without the void provision, the whole will be declared void. If the

---

[7] Notably, Republic seemed to make a distinction between the Lawnmower and Weedeater on the one hand and the Pressure Washer and Generator on the other when it objected to confirmation of one of the Debtor's proposed plans, albeit in reference to lien avoidance under 11 U.S.C. § 522(f). *See* Doc. No. 19.

- 12 -

right can be established without the void stipulation, the right of recovery is not affected by the illegal clause." *Wright v. Robinson*, 468 So.2d 94, 98 (Ala. 1985) (quoting *Sales-Davis Co. v. Henderson-Boyd Lumber Co.*, 69 So. 537, 529 (Ala. 1915). Federal courts interpreting Alabama law on severability have uniformly followed the lead of the Alabama Supreme Court. *See Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1328 & n.5 (11th Cir. 2016); *Campbell v. Pilot Catastrophe Serv., Inc.*, No. 10–0095–WS–B, 2010 WL 3306935, at *5 (S.D. Ala. Aug. 19, 2020); *Thomas v. Port II Seafood & Oyster Bar, Inc.*, No. 16-0115-WS-N, 2016 WL 8732527, at 14 *n.3 (S.D. Ala. July 8, 2016); *Camp v. Ala. Telco Credit Union*, No. 2:12-cv-2237-LSC, 2013 WL 12138871, at * 4 (N.D. Ala. Aug. 5, 2013); *Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.)*, Case No. 11-00149-MAM-7, Adv. Pro. No. 12-00060-MAM, 2013 WL 3306106, at *4 (Bankr. S.D. Ala. June 28, 2013).

The Loan Agreement could have been executed without including the Lawnmower and Weedeater as collateral. Based on the guidance from the Alabama Supreme Court and the federal court opinions interpreting Alabama law, the Court finds that the Lawnmower and Weedeater can be removed as collateral under the Loan Agreement without voiding the entire Loan. Accordingly, the Court concludes that the Loan Agreement is not void *ab initio*.

While the Court finds Republic improperly took a security interest in the Lawnmower and Weedeater, the removal of the Lawnmower and Weedeater from the Loan Agreement is purely academic here. The Amended Proof of Claim reclassified the debt owed to Republic as unsecured, and the Plan is making no distribution to unsecured creditors. However, had the claim remained secured, the secured portion would be reduced by the total value of the Lawnmower and Weedeater.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Objection is SUSTAINED in part, such that Republic's security interest in the Lawnmower and Weedeater is unenforceable. The Loan Agreement is not void *ab initio*, and, conditioned only by the removal of the Lawnmower and Weedeater as collateral, the Amended Proof of Claim is ALLOWED as filed.

Done this 5th day of December, 2024.

Christopher L. Hawkins
United States Bankruptcy Judge

c: Charles E. Grainger, Attorney for the Debtor
Jonathan P. Hoffmann, Attorney for Republic Finance
Madison T. Field, Attorney for Republic Finance
Sabrina L. McKinney, Trustee